IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JUAN CARLOS RODRIGUEZ<br>444 West Oak Avenue<br>Robesonia, PA 19551 | : <br> : <br> : <br> : | CIVIL ACTION <br><br> CASE NO.: 24-6586 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| PEPPERIDGE FARM, INC. d/b/a<br>CAMPBELL SNACKS<br>1 Campbell Place<br>Camden, NJ 08103 | : <br> : <br> : <br> : | **JURY TRIAL DEMANDED** |
| | : | |
| Defendant. | : | |
| | : | |

**FIRST AMENDED CIVIL ACTION COMPLAINT**

Juan Carlos Rodriguez (hereinafter referred to as "Plaintiff," unless indicated otherwise) by and through his undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1. Plaintiff has initiated this action to redress violations by Pepperidge Farm, Inc. d/b/a Campbell Snacks (hereinafter referred to as "Defendant") of the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101 *et. seq*.), the Family and Medical Leave Act ("FMLA" – 29 U.S.C. § 2601 et. seq.), and the Pennsylvania Human Relations Act ("PHRA"). As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

**JURISDICTION AND VENUE**

2. Plaintiff resides in and is a citizen of Pennsylvania.

3. Upon information and belief, Pepperidge Farm, Inc. d/b/a Campbell Snacks is incorporated under the laws of Connecticut with headquarters and/or principal place(s) of business in the same and New Jersey, rendering it a citizen of Connecticut and New Jersey.

4.      This Court, in accordance with 28 U.S.C. § 1332, has jurisdiction over Plaintiff's claims because there is complete diversity jurisdiction, as Plaintiff is a citizen of Pennsylvania, and Defendant is a citizen of Connecticut and New Jersey, and the amount in controversy exceeds $75,000.

5.      This action is also being initiated pursuant to federal laws (ADA and FMLA) and therefore, the United States District Court for the Eastern District of Pennsylvania also has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under the laws of the United States.

6.      This Court may properly maintain personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny.

7.      Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendant conducts business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

8.      Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and also dual-filed said charge with the Pennsylvania Human Relations Commission ("PHRC"). Plaintiff has properly exhausted his administrative proceedings before initiating this action by timely filing his Charge with the EEOC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC. Plaintiff also properly exhausted his administrative remedies with respect to his PHRA claims by dual-filing his Charge of Discrimination with the Pennsylvania Human Relations Commission and waiting one (1) year before bring such claims.

**PARTIES**

9.      The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

10.      Plaintiff is an adult who resides at the above-captioned address.

11.      Pepperidge Farm, Inc. d/b/a Campbell Snacks, a subsidiary of Campbell Soup, is a corporation that operates in the commercial bakery and snack food industry, with a principal place of business at the above-captioned address.

12.      At all times relevant herein, Defendant acted through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

**FACTUAL BACKGROUND**

13.      The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

14.      Plaintiff was employed by Defendant for almost 9 years, from on or about May 16, 2016, until his unlawful termination (discussed further *infra*) on or about February 26, 2024.

15.      During his employment with Defendant, Plaintiff held the position of General Baker Helper ("GBH"), for Defendant's 2195 North Reading Road, Denver PA 17517 location.

16.      Plaintiff was primarily supervised by Manager, Perry Burkert (hereinafter "Burkert").

17.      Throughout Plaintiff's employment with Defendant, he was a hard-working employee who performed his job well.

18.      Plaintiff has and continues to suffer from several ADA-qualifying disabilities, including but not limited to anxiety and depression (and associated complications/conditions).

19.      As a result of his aforesaid health conditions, Plaintiff suffers from panic, feelings of hopelessness, and sleeplessness, which (at times) limits his ability to perform some daily life activities, such as sleeping, focusing, and working (among other daily life activities).

20.     Despite his aforesaid health conditions and limitations, Plaintiff was able to perform his job duties well; however, Plaintiff (at times) required some reasonable medical accommodations.

21.     At all relevant times hereto, Defendant's management was aware of Plaintiff's health conditions and need for reasonable medical accommodations because as early as 2017, Plaintiff suffered a flare-up of his anxiety at work, which required his wife to take him to the hospital, and he required a brief 3-day medical leave (a reasonable accommodation under the ADA).

22.     Beginning in or about July of 2023, Plaintiff also actively began to use intermittent FMLA leave to care for and treat flare-ups of his aforesaid medical conditions as needed.

23.     In or about December of 2023, Plaintiff experienced a flare-up of his aforesaid serious health conditions, and when calling out to take a day off from work, he was informed for the first time by Defendant's third-party leave carrier, the Hartford, that his FMLA claim had expired and needed to be renewed.

24.     Plaintiff then took FMLA paperwork to his primary doctor, who informed him that Plaintiff would need to have his psychiatrist complete the paperwork, as Plaintiff was also in the process of being diagnosed with ADHD.

25.     Plaintiff was able to obtain an appointment with his psychiatrist on or about February 13, 2024, at which time, Plaintiff's doctor informed him that she would complete the recertification paperwork with him.

26.     Plaintiff at all times kept Hartford and Defendant's management advised of the process and timeline to have his certification completed.

27.    Plaintiff was advised that once his certification was completed, any of the days that Plaintiff had taken off in December through February would be covered retroactively and were currently pending.

28.    Upon Plaintiff's information and belief, his doctor completed the paperwork with him on February 13, 2024, and sent the documentation to the Hartford, and Plaintiff continued working and performing his job well.

29.    However, on or about February 26, 2024, Defendant's HR department informed Plaintiff that he had been terminated because his FMLA paperwork had not been received by the Hartford, and his absences were therefore unexcused and a violation of Defendant's points/attendance policy.

30.    Specifically, Defendant's management informed Plaintiff that he had been issued points for these "unapproved" FMLA absences as well as for several absences in the year prior, before completing intermittent FMLA paperwork – despite that management was aware that such absences were for ADA-qualifying disabilities, were brief and intermittent in nature, for which Plaintiff had provided doctor notes, and constituted a reasonable accommodation under the ADA.[1]

---

[1] 29 C.F.R. § 825.702(a) states:

(a) Nothing in FMLA modifies or affects any Federal or State law prohibiting discrimination on the basis of race, religion, color, national origin, sex, age, **or disability** (*e.g.,* Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act) . . . The purpose of the FMLA is to make leave available to eligible employees and employers within its coverage, and not to limit already existing rights and protection." S. Rep. No. 103-3, at 38 (1993). **An employer must therefore provide leave under whichever statutory provision provides the greater rights to employees. When an employer violates both FMLA and a discrimination law, an employee may be able to recover under either or both statutes (double relief may not be awarded for the same loss; when remedies coincide, a claimant may be allowed to utilize whichever avenue of relief is desired.** *Laffey* v. *Northwest Airlines, Inc.,* 567 F.2d 429, 445 (D.C. Cir. 1976), *cert. denied,* 434 U.S. 1086 (1978) (emphasis added); *see also Sharbaugh,* 2016 WL 6834613, at *16-17 (holding that less than eight months of leave, five of which occurred after exhaustion of FMLA, could constitute a reasonable accommodation under the ADA); *E.E.O.C. v. Midwest Indep. Transmission Sys. Operator, Inc.*, No. 1:11-CV-1703-WTL-DML, 2013 WL 2389856, at *3-5 (S.D. Ind. May 30, 2013) (denying summary judgment for defendant with employee who requested accommodation of two months additional leave after FMLA had exhausted, for a total of five months of medical leave).

31.    Instead of properly accommodating Plaintiff by engaging in the interactive process, informing Plaintiff that the paperwork had not been received by his doctor, and/or allowing him to reach out to his doctor to address the issues or resend the paperwork, Defendant abruptly terminated Plaintiff, with Defendant's Human Resources ("HR") department advising him only "you know our attendance policy."

32.    Defendant's blanket points policy for all unscheduled absences, regardless of whether they are for medical reasons and/or as a result of ADA-qualifying disabilities, is *per se* unlawful.

33.    Plaintiff believes and therefore avers that he was subjected to discrimination and retaliation because of (1) his actual/perceived/record of disabilities; (2) his requested reasonable medical accommodations (*i.e.*, intermittent medical leave); and (3) Defendant's failure to properly accommodate him (set forth *supra*).

34.    Plaintiff also believes and therefore avers that his disabilities were a motivating and determinative factor in the termination of his employment by Defendant.

**COUNT I**
**<u>Violations of the Americans with Disabilities Act, as Amended ("ADA")</u>**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; and [3] Failure to Accommodate)**

35.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

36.    Plaintiff suffered from qualifying health conditions under the ADA which affected his ability (at times) to perform some daily life activities including but not limited to sleeping, concentrating, and working (among other daily life activities).

37.    Plaintiff kept Defendant's management informed of his serious medical conditions and need for medical treatment and other accommodations.

38.     Despite Plaintiff's aforementioned health conditions and limitations, he was still able to perform the duties of his job well with Defendant; however, Plaintiff did require reasonable medical accommodations at times.

39.     Plaintiff requested reasonable accommodations from Defendant on several occasions throughout his employment with Defendant, including but not limited to intermittent and/or block medical leave.

40.     Plaintiff was terminated from his employment with Defendant on or about February 26, 2024, in close proximity to his requests for/utilization of reasonable medical accommodations (*i.e.*, intermittent and/or block medical leave).

41.     Prior to Plaintiff's termination, Defendant failed to properly engage in the interactive process by informing Plaintiff that his medical leave paperwork had not been received by his doctor, and/or allow him to reach out to his doctor to address the issues or resend the paperwork.   Instead, Defendant abruptly terminated Plaintiff.

42.     Plaintiff believes and therefore avers that he was subjected to discrimination and retaliation because of (1) his actual/perceived/record of disabilities; (2) his requested reasonable medical accommodations (*i.e.*, intermittent medical leave); and (3) Defendant's failure to properly accommodate him (set forth *supra*).

43.     Plaintiff also believes and therefore avers that his disabilities were a motivating and determinative factor in the termination of his employment by Defendant.

44.     These actions aforesaid constitute violations of the ADA.

**COUNT II**
**Violations of the Family and Medical Leave Act ("FMLA")**
**(Interference & Retaliation)**

45.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

46.     Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

47.     Plaintiff requested leave from Defendant, his employer, with whom he had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

48.     Plaintiff had at least 1,250 hours of service with Defendant during his last full year of employment.

49.     Defendant is engaged in an industry affecting commerce and employs fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

50.     Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

51.     Plaintiff was terminated in close proximity to his requests for/utilization of intermittent FMLA-qualifying leave.

52.     Defendant committed interference and retaliation violations of the FMLA by: (1) terminating Plaintiff for requesting and/or exercising his FMLA rights and/or for taking FMLA-qualifying leave; (2) considering Plaintiff's FMLA leave needs in making the decision to terminate him; (3) terminating Plaintiff to intimidate him and/or prevent him from taking FMLA-qualifying leave in the future; and (4) engaging in conduct which discouraged Plaintiff from exercising his FMLA rights and which would discourage, dissuade and/or chill a reasonable person's desire to request and/or take FMLA leave.

53.     These actions as aforesaid constitute violations of the FMLA.

## COUNT III
## <u>Violations of the Pennsylvania Human Relations Act ("PHRA")</u>
## ([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; and [3] Failure to Accommodate)

54.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

55.     Plaintiff reasserts each and every allegation from Count I of this First Amended Complaint as the same constitutes unlawful violations under the PHRA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.     Defendant is to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B.     Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C.     Plaintiff is to be awarded liquidated and/or other damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D.     Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate;

E.     Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

F.     Plaintiff demands trial by jury on all issues so triable consistent with Fed. R. Civ. P. 38(a)(1).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:   */s/ Andrew R. Olcese*
        Andrew R. Olcese, Esq.
        8 Interplex Drive
        Suite 210
        Feasterville-Trevose, PA 19053
Dated:  April 28, 2025                (215) 639-0801